IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REJEANA M. SILLA,                          )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )
                                           )     2:20-cv-00963
HOLDINGS ACQUISITION CO., L.P. d/b/a       )
RIVERS CASINO,                             )
                                           )
            Defendant.                     )

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Before the Court are the parties' cross-Motions for Summary Judgment (ECF Nos. 73, 78). The Court held oral argument on those Motions, and they are ripe for disposition. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

## I.      BACKGROUND

The factual background of this case is set out in full in the Court's prior Opinion (ECF No. 16). The parties are familiar with the factual background of this action, so the Court recites it only as necessary here.

Ms. Rejeana M. Silla ("Silla") brings this action *pro se*, raising various claims of discrimination, harassment, and retaliation against Defendant Holdings Acquisition Co., L.P. d/b/a/ Rivers Casino pursuant to the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"). (ECF No. 7). Ms. Silla's Complaint additionally asserts a state law claim for breach of contract, alleging

1

that Defendant breached a contract for employment created by its employee onboarding documents. (*Id.*).

Defendant previously moved to dismiss the First Amended Complaint, claiming that that Silla filed her original complaint after the expiration of the 90-day filing window that follows the issuance of a dismissal and right to sue ("RTS") letter by the Equal Employment Opportunity Commission ("EEOC") under 42 U.S.C. § 2000e–5(f)(1). (ECF Nos. 9, 10). The Court granted Defendant's Motion to Dismiss, concluding that Silla's suit was filed after the 90-day EEOC right to sue window closed and that equitable tolling was inappropriate,[1] but on appeal, the Third Circuit vacated and remanded. Because the expiration of the 90-day filing window was not apparent on the face of Silla's original Complaint, it held that it was error for the Court to dismiss Silla's claims on timeliness grounds, at least at the motion to dismiss stage. *Silla v. Holdings Acquisition Co LP*, No. 20-3556, 2021 WL 4206169, at *2 (3d Cir. Sept. 16, 2021).

On remand, and following discovery, both parties filed Motions for Summary Judgment. (ECF Nos. 73, 78). Defendant reinstitutes its statute of limitations argument, alleging that, absent the motion to dismiss stage's deferential standard of review for affirmative defenses, Silla's ADA and Title VII claims were undisputedly filed outside the 90-day right to sue window. (ECF No. 74 at 13). On the merits, Defendant argues that Silla's allegations under the PHRA, ADA, and Title VII do not raise a genuine issue of material fact to preclude summary judgment and that there was no ongoing contractual relationship between Silla and Defendant. (*Id.* at 15, 19, 23).

Silla, in her Motion for Summary Judgment, argues that (1) Defendant used evaluation criteria that lacked any relationship to her performance; (2) Defendant's termination of Silla was not a reasonable exercise of its business judgment; (3) other employees of the same protected class

---

[1] After dismissing Silla's federal law claims for lack of timeliness, the Court dismissed Silla's supplemental state law claims, declining to exercise supplemental jurisdiction over them. (ECF No. 16 at 11).

were discriminated against by Defendant; and (4) Defendant intentionally discriminated against Silla with respect to her employment discrimination claim. (ECF No. 79 at 9, 11).[2]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Motions for summary judgment, and responses in opposition to such motions, must be supposed by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A material fact is a fact whose resolution will affect the outcome of the case under applicable law. *Liberty Lobby.*, 477 U.S. at 248. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Williams v.*

---

[2] Silla raised several other "issues" in a section of her Brief in Support of Summary Judgment titled "Issues Raised." (ECF No. 79 at 8). Silla, however, does not expand on any of these other "issues" in the "Argument" section of her Brief, and the Court concludes that via waiver or otherwise, such are not before the Court.

*Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989) (stating that the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). Where the Court concludes that the record presented is inadequate or inconclusive, denial of a summary judgment motion is appropriate. *Taylor v. Truman Med. Ctr.*, No. 03-cv-0001, 2006 WL 2796389, at *3 (W.D. Mo. Sept. 25, 2006).

While submissions from *pro se* plaintiffs are held to less stringent standards than submissions from lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "on a motion for summary judgment, 'a *pro se* plaintiff is not relieved of [her] obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment.'" *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (quoting *Ray v. Fed. Ins. Co.*, No. 05-2507, 2007 WL 1377645, at *3 (E.D. Pa. May 10, 2007)). "The party opposing summary judgment, whether *pro se* or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009).

## III.   DISCUSSION

### A.   Timeliness

#### 1.   Right to Sue Window

Under 42 U.S.C. § 2000e–5(f)(1), claims brought under Title VII must be filed within ninety days of a claimant's receipt of the EEOC RTS letter. *Elkadrawy v. Vanguard Group, Inc.,* 584 F.3d 169, 173 (3d Cir. 2009). The ADA incorporates by reference Title VII's requirement that a civil action must be filed within ninety days after the EEOC notifies the person aggrieved of a charge's dismissal. *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 n.4 (3d Cir. 2003); 42

U.S.C. § 12117. This 90-day period is therefore applicable to the claims asserted under both Title VII and the ADA.

The beginning of that 90-day right to sue period is "generally considered to be the date on which the complainant receives the right-to-sue letter." *Burgh v. Borough Council of Borough of Montrose,* 251 F.3d 465, 470 (3d Cir. 2001) (citations omitted). The institution of suit within ninety days is not treated as a jurisdictional requirement, but instead is treated as a claims processing rule. *Figueroa v. Buccaneer Hotel, Inc.,* 188 F.3d 172, 176 (3d Cir. 1999). The Third Circuit has held that raising this issue is an affirmative defense and that the burden of proof "rests solely on the employer." *Ebbert.,* 319 F.3d at 108. And though the Third Circuit's Mandate from the appeal in this case made plain that operative standard at the motion to dismiss stage was whether the time bar was apparent on the face of the complaint, *Silla*, 2021 WL 4206169, at *1, at summary judgment, this deferential rule is not applicable. *See Figueroa*, 188 F.3d at 176 (affirming district court's grant of summary judgment as to the issue of timeliness under Title VII).

Here, Defendant has again raised Silla's alleged lack of timeliness in filing this suit. Silla dual-filed an EEOC charge on February 25, 2020, raising claims under Title VII, ADA, and the PHRA. (ECF No. 10-1). The EEOC issued its right to sue letter to Silla dated March 20, 2020.[3] Silla filed this suit on June 25, 2020. Even applying the presumption that Silla received her RTS letter on March 23, 2020, *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999), the filing of her Complaint in the instant action still falls outside of the mandatory 90-day filing window. *Figueroa*, 188 F.3d at 176 ("We have held that a claim filed even one day beyond

---

[3] In her First Amended Complaint, Silla says that she received her right to sue letter on March 20, 2020. (ECF No. 7 ¶ 50). If the right to sue letter was received on March 20, 2020, 97 days would have elapsed before this lawsuit was filed. In her response in opposition to Defendant's Summary Judgment Motion, she does not dispute that the date of receipt of the right to sue letter was such that the filing of this action in this Court occurred outside of the 90-day filing period referenced above. In fact, she admitted that she filed suit 98 days after the March 20, 2020 date. (ECF No. 88 at 15). Instead, Silla says that equitable tolling applies to allow her case to proceed nonetheless. (ECF No. 87 at 1).

this ninety-day window is untimely and may be dismissed absent an equitable reason for disregarding this statutory requirement.") (citing *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986)). It is not disputed that this action was instituted in this Court more than 90 days after Silla received the right to sue letter. Silla's claims under Title VII and the ADA are therefore untimely.

### 2. Equitable Tolling

In response to the timeliness reality that she does not dispute, Silla raises two arguments in support of equitable tolling of that filing period: (1) because the EEOC decision incorrectly applied the law and the facts, the 90-day right to sue window never began running; and (2) Silla refers to conversations she had with EEOC staffers informing her that the 90-day window can be tolled for "various different reasons."

Neither argument carries the day; equitable tolling is not appropriate in this case.

Turning first to Silla's "application of the law and the facts" argument, her position boils down to this: an EEOC staffer wrote Silla a letter stating that the EEOC "may decline to review a request to reconsider an EEOC final finding unless the Charging Party presents substantial new and relevant evidence, or a persuasive argument that the EEOC's prior decision was contrary to law or the facts." (ECF No. 94-1 at 1). Silla apparently had her EEOC intake charge drafted by an EEOC staffer, but according to Silla, that staffer "paraphrased" Silla's allegations, not wording Silla's allegations or organizing them in a manner that Silla preferred. (ECF No. 94-2). Silla therefore argues that the EEOC mishandled her intake and got the facts wrong in the charge, which led to the facts being wrong in the dismissal of the charge, which should have constituted grounds for the EEOC to reconsider its findings.

As for her second tolling argument, Silla argues that she had phone conversations with EEOC representatives that, in short, caused her to file her Complaint in this Court after the 90-day deadline expired. (ECF No. 94 at 4; ECF No. 108 at 2).

Defendant vigorously disputes Silla's tolling arguments: "There is absolutely no evidence in the record to support Plaintiff's contention that the EEOC – in any way – suggested to Plaintiff that the 90-day filing period applicable to her charge in this case could be tolled or otherwise avoided. None." (ECF No. 109 at 2). And in this regard, it is important to note that after oral argument on the pending Motions, the Court granted the Ms. Silla the opportunity to provide specific record references that supported her assertions about communications with the EEOC, and she failed to do so. (ECF Nos. 107, 108).

In her brief in opposition to Defendant's Motion to Dismiss, Silla further elaborates on other supposed conversations with EEOC staffers. Silla relies upon an email that she erroneously received from an EEOC staffer that was supposed to be kept in-house at the EEOC. (ECF No. 12-1 at 5–7). Silla does not appear to raise this email as a basis for equitable tolling in her Motion for Summary Judgment, but because Silla incorporates one of her responses to that email in one of her responsive filings (ECF No. 94-4), the Court will address it prior to returning to Silla's argument that the EEOC allegedly mishandled her intake interview, thereby providing a basis for equitable tolling in this case.

That email discusses the EEOC's internal view of Silla's charge, as well as another charge filed by her against a different former employer that is not at issue here, and crucially, that email recommended only that *the other charge* be partially reopened (ECF No. 12-1 at 7). As the Court previously discussed (ECF No. 16 at 7), that email did not recommend that the investigation into *the charge at issue here* should be reopened (ECF No. 12-1 at 7), the sender notified Silla that she

should disregard the erroneous communication entirely and destroy any record of it (ECF No. 12-1 at 2), and Silla affirmed that she would disregard that email. (ECF No. 12-1 ("I figured it was sent to me by mistake.")). There is thus no basis for Silla to claim justified reliance on this email as a reason for her delayed filing of this suit against this Defendant. *Cf. Elchik v. Akustica, Inc.*, No. 12-cv-00578, 2013 WL 1403341, at *1 (W.D. Pa. Apr. 5, 2013) (concluding that the EEOC's revocation of a right to sue letter constituted grounds for equitable tolling).

Equitable tolling may be applied to allow plaintiffs to sue after the statute of limitations has run on the claims in the underlying suit. *Seitzinger*, 165 F.3d at 240, but invocation of tolling should be done "only sparingly." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990). For equitable tolling to be applied, there must be extraordinary circumstances that prevented the plaintiff from filing suit in federal court. *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997). The Supreme Court has set forth four (4) such "extraordinary" circumstances: inadequate notice, a pending motion for appointment of counsel, a situation where the court led plaintiff to believe that she has done "everything required of her," and/or misconduct by the defendant to lull the plaintiff into inaction. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (per curiam). Our Circuit has also recognized that tolling may be appropriate if the plaintiff has timely asserted her rights in the wrong forum or if the plaintiff, "in some extraordinary way," has been prevented from asserting her rights. *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) (citation omitted). Filing a request for reconsideration with the EEOC because of disagreement with its conclusions, however, is not a sound basis for equitable tolling. *See McCray v. Corry Mfg. Co.*, 61 F.3d 224, 229 (3d Cir. 1995). "To hold otherwise would permit claimants to manipulate the ninety-day filing period merely by requesting reconsideration to extend the limitations period." *Id.* at 227–28.

Here, Silla has not advanced record evidence under any of these bases for tolling so as to preclude summary judgment in Defendant's favor. Silla does not dispute that (1) she was provided adequate notice by the EEOC (and her extensive correspondence with the EEOC regarding her charge indicates that she was actually on notice), (2) she has not sought appointment of a lawyer, (3) the Court itself did not mislead her given that the timeliness issue goes to her first interaction with the Court by filing suit, (4) there is no evidence that Defendant lulled Silla into filing this suit on a date that was too late, and (5) Silla did not previously assert her rights in the wrong forum. Only the last basis for tolling, the prevention of timely asserting one's rights, is, when liberally construing Silla's filings, theoretically in question here based on Silla's allegations of being misled by the EEOC. However, Silla has not sufficiently demonstrated that she was prevented from asserting her rights because of being misled by the EEOC.

In limited circumstances, the EEOC's mishandling of an intake interview or provision of misleading information can provide a basis for equitable tolling. *E.g., Granger v. Aaron's Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citing *Wilson v. Sec'y Dep't of Veterans Affs.*, 65 F.3d 402, 404 (5th Cir. 1995)). In this Circuit, courts have concluded that the provision of misleading information by the EEOC can provide a basis for equitable tolling where the Plaintiff was in the position where they justifiably relied on the EEOC's misinformation in failing to file suit sooner. *Elchik*, 2013 WL 1403341, at *1. In *Elchik*, the court concluded that the EEOC's provision of a notice of intent to reconsider, followed by a second, new right to sue letter constituted a provision of misleading information that the plaintiff could have justifiably relied upon in delaying before filing suit. *Id.* at *1–*2. Key to the court's conclusion in that case was the procedural posture; the Court was hesitant to resolve that equitable tolling argument against the plaintiff at the motion to dismiss stage. *Id.* at *2 ("Our Court of Appeals has cautioned that it is generally inappropriate to resolve a plausible

equitable tolling argument against a plaintiff at the Motion to Dismiss stage."). This case is instead now at the summary judgment stage.

Other courts in this Circuit have refrained from going as far as the *Elchik* court. In *Robinson*, the Court addressed whether the EEOC misled the plaintiff such that he was "in some extraordinary way" prevented from asserting his rights. *Robinson*, 107 F.3d at 1022. Like Silla, Robinson alleged that he was contacted by an EEOC staffer via telephone and that said staffer gave him information that caused Robinson to delay before filing suit in federal court. *Id.* at 1023. The *Robinson* court nonetheless held that "accepting as true Robinson's version of events . . . we hold that one phone conversation with an EEO counselor does not rise to the level of being prevented in an 'extraordinary way' by the EEOC from asserting his rights." *Id.*

*Robinson* is instructive. Silla only cites disagreement with the EEOC's characterization of the underlying facts in its dismissal of her charge and alleged phone calls with EEOC staffers that purportedly misled her about equitable tolling. Mere disagreement with the EEOC's characterization of the facts, without more, is not enough to amount to a deprivation of *Silla's* rights in an "extraordinary" fashion. A contrary conclusion would lead plaintiffs who allege factual disagreements with EEOC determinations to, with ease, do an end-run around the 90-day right to sue window. Such a result is inconsistent with Third Circuit case law and congressional intent in enacting 42 U.S.C. § 2000e–5(f)(1). *McCray*, 61 F.3d at 227–28. And what's more, Silla does not assert on the record before the Court what material facts the EEOC got wrong. And on the record before the Court, Silla has not advanced record evidence regarding the substance of these phone calls with EEOC staffers that purportedly misled her. Simple reference to misleading phone calls in the body of a substantive filing does not cut it, as oppositions to motions for summary judgment must reference evidentiary material in the record before the Court beyond the pleadings. Fed. R.

Civ. P. 56(c)(1). And as set forth above, the EEOC email that was erroneously sent to Silla does not provide Silla a basis upon which she can claim she was misled, especially given that she admitted that said email was sent to her by mistake. Without evidence in the record that demonstrates the necessity of the application of equitable principles based on the factual content of the asserted EEOC phone calls, the alleged mishandling of her intake, and the email that she erroneously received, tolling is not appropriate in this case.

In response, Silla relies upon *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250 (2016). There, the Court stated that, under *Holland v. Florida*, 560 U.S. 631 (2010), which concerned equitable tolling in the *habeas* context, a litigant is entitled to equitable tolling upon establishing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe*, 577 U.S. at 255. The Court went on to elaborate that *Holland* presents an elemental test; only where a litigant makes a sufficient showing under *both* prongs is she entitled to equitable tolling. *Id.* ("[W]e have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other.") (citation omitted). As set forth above, there is no extraordinary circumstance, on the record actually before the Court that stood in Silla's way from filing this suit. She was simply too late.

**B.  Title VII Claims**

Though the statute of limitations constitutes sufficient and independent grounds for a grant of summary judgment for Defendant as to Silla's federal claims, for the sake of completeness, the Court will separately address the merits of Defendant's Motion as to Silla's federal and state claims.

In her Amended Complaint, Silla alleges four counts under Title VII: quid pro quo harassment, retaliation, hostile work environment, and gender discrimination (ECF No. 7 at 43–47).

### 1. Quid Pro Quo Harassment

To establish a claim for quid pro quo harassment, a plaintiff must demonstrate that "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct" were made when "(1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 27 (3d Cir. 1997) (citation and internal marks omitted).

The Third Circuit has stated that the Supreme Court's decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) eroded the distinction between quid pro quo claims and hostile work environment claims by placing an increased focus on "tangible adverse employment decisions." *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 120 (3d Cir. 1999). With the focus necessarily on adverse employment decisions, there is nothing in the record that supports the conclusion that any part of Silla's job was conditioned on the submission to (or, in the alternative, the rejection of) sexual advances, sexual favors, or other verbal or physical conduct. The only possible evidence of sexual advances in the record are messages from one "Vince DeAngelo." In the messages, DeAngelo seems to attempt to ask Silla out socially, which she declined. (ECF No. 81-4 at 8). After being rejected, DeAngelo did not continue to message her. (*Id.*). Importantly, there is no evidence on the record before the Court that DeAngelo was one of Silla's coworkers. And if Silla had established that DeAngelo was a coworker, nowhere in those messages did DeAngelo attempt to coerce Silla into

sexual activity by connecting said activity with some aspect of Silla's employment over which he had material influence. DeAngelo did not threaten to try to get Silla fired or to otherwise coerce her. DeAngelo asked Silla out socially, Silla said no, and DeAngelo stopped messaging her. Nothing more occurred based on the screenshots that Silla introduced into the record. No reasonable jury could conclude that Silla was subjected to quid pro quo harassment based on the record before the Court.

### 2.  Title VII Retaliation

To establish a claim for retaliation under Title VII, a plaintiff must show that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). "Protected activity includes formal charges of discrimination 'as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.'" *Mufti v. Aarsand & Co.*, 667 F. Supp. 2d 535, 552 (W.D. Pa. 2009) (citing *Sumner v. U.S. Postal Service,* 899 F.2d 203, 209 (2d Cir. 1990)). But in our Circuit, for any of those activities to be considered protected under Title VII, the employee must also have a "good faith, reasonable belief that a violation existed" that spawned engagement in the protected activity at issue. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996).

While Silla submitted numerous complaints to Defendant, those complaints are largely concerned with disagreements about financial matters (tip-pooling protocol), scheduling, and a general inability to get along with her coworkers. The last of these "complaints" could potentially

constitute protected activity if one of Silla's coworkers harassed or discriminated against her based on a protected characteristic, but Silla's disagreements with coworkers were centered on Silla's quality of work. (ECF No. 75-11 at 2 ("[T]hey just kept bothering me on how I was doing my job.")). Indeed, when asked how her coworkers were harassing her, Silla stated that "the other bartenders were always critiquing her work." (*Id.*). There is nothing in the record to support the assertion that Silla's complaints were concerned with a good faith, reasonable belief that Defendant was violating Title VII during Silla's employment. Silla therefore did not engage in protected activity under Title VII.

Further, Silla is unable to demonstrate a causal connection between her discharge and the complaints that she does reference. During her discharge meeting, Silla brought up the purported issues with other coworkers, and the supervisor conducting the interview responded that he had "never heard of any of that before." (ECF No. 75-9 at 2). When that supervisor asked his counterpart if he knew what Silla was talking about, she too did not know what Silla was referencing. (*Id.*). Silla has not advanced record evidence that could rationally undercut those assertions. Thus, the discharge that occurred during this meeting was, on the record advanced to the Court, wholly unconnected to any hypothetical protected activity. Silla was instead terminated due to inadequate performance. Therefore, due to the lack of protected activity and a causal connection between Silla's complaints and her discharge, a reasonable jury could not conclude that Defendant retaliated against Silla in violation of Title VII.

### 3. Title VII Hostile Work Environment

To establish a hostile work environment claim under Title VII, a plaintiff must:

show that 1) the employee suffered intentional discrimination because of his/her [membership in a protected class such as sex], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the

discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability.

*Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 61 (3d Cir. 2019) (citing *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017)). As set forth above, Silla's allegations of harassment and discrimination are based on the assertion that other female bartenders were "bullying" her, but that alleged "bullying" centered on Silla's workplace performance and was not because of her gender. (ECF No. 75-11). And as also set forth above, even if said "bullying" were somehow connected to Silla's gender, the record provides no basis to impute these actions to her employer via *respondeat superior*.

Silla does not independently raise harassment from her supervisors in her Motion for Summary Judgment. However, during the deposition of Matthew Fischman, a "beverage supervisor," Fischman was asked whether he told Silla that "this might not be the right job for her," (ECF No. 81-3 at 49), whether he recalled Silla complaining to him about another employee "harassing [her] by making [her] clean stuff that was already clean" (*id.* at 8), and whether he recalled telling Silla "that she was a cute girl" in connection with her ability to succeed in her role (*Id.* at 10). Fischman either denied or did not recall each of these alleged statements.

But these statements, assuming Silla's side of the story is true (as the Court must at this stage), fall short of the severe and pervasive conduct required to establish a Title VII hostile work environment claim. *Faragher*, 524 U.S. at 788 ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code.") (citation and internal marks omitted); *Norris v. NLMK Pennsylvania, LLC*, No. 21-cv-291, 2022 WL 11264627, at *13 (W.D. Pa. Oct. 19, 2022) ("[T]he ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing cannot evidence a hostile work environment.") (internal marks omitted); *Chinery v. Am. Airlines*, 778 F. App'x 142,

146 (3d Cir. 2019) (rejecting hostile work environment claims where the plaintiff was directly threatened on social media by fellow flight attendants and concluding that said posts constituted only "offhand comments and isolated incidents"). The statements at issue here fall far short of Title VII's demanding standards, and their sporadic nature does not evidence a pervasively hostile work environment that functionally altered Silla's conditions of employment. Therefore, as a matter of law, no reasonable jury could conclude that Silla was subjected to a hostile work environment in violation of Title VII.

### 4.  Gender Discrimination (Disparate Treatment)

To establish a gender discrimination claim under Title VII, the plaintiff must show that "(1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of unlawful discrimination." *Jenkins v. Sw. Pennsylvania Hum. Servs., Inc.*, No. 20-cv-501, 2021 WL 5989112, *12 (W.D. Pa. Dec. 17, 2021) (citing *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020)). To satisfy the fourth prong of this test, a plaintiff must "(1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between [her] membership in a protected class and the adverse employment action." *Id.* (citations and internal marks omitted).

Here, as set forth above, there is no record evidence that could demonstrate a causal nexus between Silla's gender and her termination. The record as to her termination from employment is plainly focused on her inadequate performance and that alone. As for evidence regarding similarly situated employees who were treated better, on the record before the Court here, there is none.

Silla does not advance record evidence that could rationally demonstrate that persons who identify as men were treated more favorably than her in similar circumstances or that the stated reasons for her dismissal were not worth credence. Indeed, the vast majority of Defendant's employees whom Silla quarreled with were female. Silla has not provided evidence that could create an inference of discrimination or that the employer's reasons for termination were a pretext for unlawful discrimination, and therefore, no reasonable jury could conclude that Silla was subjected to disparate treatment because of her gender.

### C. ADA Claims

In addition to her Title VII claims, Silla brings four (4) ADA claims: failure to accommodate, retaliation, hostile work environment, and disability discrimination. Aside from her failure to accommodate claim, Silla's ADA claims mirror her Title VII claims. And for the same reasons her Title VII claims failed, those ADA claims are also unavailing: Silla is unable to advance evidence that would allow a jury to conclude that her discharge and workplace feuds were in any way connected to an alleged disability.

#### 1. Failure to Accommodate

To establish a failure to accommodate claim under the ADA, a plaintiff must demonstrate that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered [a] ... refus[al] to make reasonable accommodations." *EEOC v. FedEx Ground Package Sys., Inc.*, 158 F. Supp. 3d 393, 399 (W.D. Pa. 2016) (*citing Hohider v. UPS, Inc.*, 574 F.3d 169, 186 (3d Cir. 2009)).

Silla's only reference to a supposed disability comes from her original Complaint. In it, she states that she has Persistent Postural Perceptual Dizziness, which can be exacerbated by stress of

anxiety. (ECF No. 1 ¶ 136). Silla also says that Defendant was aware that she had depression and post-traumatic stress disorder, for which she allegedly took medication. (*Id.* ¶ 137–39). Silla provides no documentation to support these supposed diagnoses, nor evidence that Defendant was aware of her conditions, other than her statements in her original Complaint. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing 42 U.S.C. § 121012(2)) (stating that a plaintiff has a disability under the ADA "if she has a mental impairment that substantially limits a major life activity, has a record of such an impairment, or is regarded as having such an impairment"). Without record evidence that Silla is afflicted with these mental impairments, Silla's status as a disabled person under the ADA is tenuous at best.

Assuming without deciding that Silla qualifies as a disabled person as defined by the ADA, Silla has not demonstrated that she informed Defendant of any supposed disability, let alone requested an accommodation for one, or that an accommodation was even necessary. She states in her Amended Complaint that Defendant was informed of the disability discrimination that occurred at her prior employer (ECF No. 7 ¶ 66), but nothing in the record substantiates facts backing up that allegation, or how that allgation is even germane here. In addition, assuming Silla's version of events is true and that she did inform Defendant of her conditions, Silla never requested an accommodation, nor does she provide evidence that one was necessary, what this supposed accommodation was, or that it would have ameliorated the performance issues that the Defendant's Motion focuses on. The only requests that Silla made pertained to scheduling, and she only requested such so that she could utilize public transit. (ECF No. 1 ¶ 107). Because this request was not, on this record, connected to any of Silla's supposed disabilities, her accommodation claim fails.

### 2.   ADA Retaliation

To establish a claim for ADA retaliation, a plaintiff must demonstrate that "(1) [s]he engaged in conduct protected by the ADA, such as complaining about a lack of reasonable accommodation [or disability discrimination]; (2) [Rivers Casino] subjected [her] to some adverse action; and (3) there was a causal connection between the protected conduct and the adverse action." *Talley v. Clark*, No. 19-3078, 2023 WL 118470, at *2 (3d Cir. Jan. 6, 2023) (citations omitted).

Here, Silla made no request for an accommodation, and as set forth above, the "discrimination" that Silla says that she suffered was comprised of general workplace quarrels with her coworkers. There is no evidence to suggest that Silla was targeted by her coworkers because of any purported disability. And without having engaged in activity that is protected by the ADA, there can be no causal connection between Silla's termination and any protected activity. Therefore, there is no issue of material fact as to Silla's ADA retaliation claim.

### 3.   ADA Hostile Work Environment

The elements of an ADA hostile work environment claim are similar to the elements of a Title VII hostile work environment claim:

> A claim for harassment based on disability, like one under Title VII, would require a showing that: (1) [Silla] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that [Defendant] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Walton v. Mental Health Ass'n. of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999). Silla's hostile work environment claim under the ADA fails for the same reason her hostile work environment claim failed under Title VII: the "harassment" that Silla suffered was in no way "based on her disability."

There is nothing in the record to support a conclusion that Silla's coworkers were on notice that she had a disability, let alone that Silla's coworkers harassed her because of a disability. Without knowledge of Silla's disability, any "harassment" Silla suffered lacks a causal connection to her supposed disabilities. And without a causal connection between the purported "harassment" that Silla says that she suffered and her alleged disabilities, a reasonable jury could not rationally conclude determine that Silla was subjected to a hostile work environment in violation of the ADA.

### 4.   Disability Discrimination (Disparate Treatment)

To establish a prima facie case of disparate treatment disability discrimination, Silla must demonstrate that she "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action because of that disability." *Frost v. City of Phila.*, 839 F. App'x 752, 755–56 (3d Cir. 2021) (citing *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006)). If Silla makes that showing, the burden shifts to Defendant to raise legitimate reasons for termination. If Defendant does that, the burden shifts back to Silla to demonstrate that such reasons are pretextual. *Id.* at 756 (applying the holding in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1983) to ADA disparate treatment claims).

Here, Silla fails to create a genuine issue of fact as to her assertion that Defendant terminated her based on her alleged disabilities. There are no facts in the record that support an inference that Defendant discharged Silla, either in whole or in part, based on her alleged disabilities. Similarly, had Silla met that burden, she has not advanced evidence from which a jury could rationally conclude that Defendant's legitimate reasons for employment termination were pretext for unlawful discrimination: Silla's performance, according to Defendant, simply did not cut it, and termination at the forty-five-day mark was not an abnormal practice for Defendant. (ECF No. 75-10; ECF No. 81-3 at 22). Therefore, because Silla fails to demonstrate a causal nexus

between her discharge and her alleged disabilities, and because Defendant provides legitimate grounds for termination without Silla advancing evidence from which a jury could conclude that that those grounds were pretextual, no dispute of material fact remains as to Silla's ADA disability discrimination claims, and the Defendant is entitled to summary judgment on those claims in its favor.

### D.  Claims Under Pennsylvania Law

The Court has no independent jurisdiction over Silla's state law claims because the parties are not diverse. *See* 28 U.S.C. § 1332(1). Silla asserts that she resides in Pennsylvania, apparently on a permanent basis, and she therefore appears to be domiciled in Pennsylvania. (ECF No. 7 at 12). Silla asserts that Rivers Casino is likewise a resident of Pennsylvania. (ECF No. 7 at 12). And after having granted summary judgment for Defendant on Silla's federal Title VII and ADA claims, the Court will exercise supplemental jurisdiction over Silla's completely parallel claims under the PHRA but concludes that it should not and will not exercise supplemental jurisdiction over the sole remaining non-statutory state law claim under 28 U.S.C. §§ 1367(c)(1), (c)(3), and that sole remaining state law claim will be dismissed without prejudice.

Silla's PHRA claims cannot go forward on the merits. Because "Pennsylvania courts 'generally interpret the PHRA in accord with its federal counterparts,' this Court may generally consider [Silla's] PHRA claim[s] as coextensive with her Title VII claim[s]." *Bushra v. Main Line Health, Inc.*, No. 23-cv-1090, 2023 WL 9005584, at *3 (E.D. Pa. Dec. 28, 2023) (quoting *Kelly v. Drexel U.*, 94 F.3d 102, 105 (3d Cir. 1996)). Thus, given that Silla's PHRA claims are coextensive with her Title VII and ADA claims, and because Silla has not, on this record, advanced a genuine issue of material fact as to her Title VII and ADA claims, summary judgment must be granted for Defendant as to Silla's PHRA claims, as well.

The Court concludes that it is appropriate to decline to exercise supplemental jurisdiction over Silla's state-law breach of contract claim, as to which Silla alleges the existence of an oral contract. (ECF No. 1 ¶ 37). Whether an employee of Defendant created a contract with Silla during her orientation by telling her (and other new hires) that she would "have a good career at Rivers Casino," so long as they followed the rules, guidelines, and policies set forth in the employee handbook is a more nuanced and complex question of state law that potentially involves the intersection of presumptions of at-will employment and the principles underlying oral, implied contracts. That claim also has nothing to do with the overlapping federal and state employment discrimination claims Silla has asserted and which were resolved on the merits in this Opinion. Consequently, due to that nature of Silla's breach of contract claim, and because the Court has resolved all of Silla's other claims over which the Court has original jurisdiction, the Court declines to exercise jurisdiction over Silla's breach of contract claim pursuant to 28 U.S.C. §§ 1367(c)(1), (c)(3).

## IV.        CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 73) is GRANTED as to all of Silla's federal law claims. Because Silla's Motion for Summary Judgment (ECF No. 78) is essentially a mirror image of Defendant's Motion for Summary Judgment, the Court need not and does not separately address it, and Silla's Motion is DENIED. Summary judgment is also GRANTED for Defendant on Silla's PHRA claims, as the PHRA is coextensive with Title VII and the ADA under prevailing Circuit law, and those state law claims were addressed and resolved on the merits in this Opinion. Silla's remaining state law breach of contract claim is DISMISSED without prejudice, as the Court declines to exercise supplemental jurisdiction

over it. The Clerk will close the case on the docket of this Court, and an appropriate Order will be entered.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  March 6, 2024